In the Matter of ASSOCIATION OF BOARDS OF VISITORS OF NEW YORK STATE FACILITIES FOR THE MENTALLY DISABLED et al., Appellants, v JAMES A. PREVOST, as Commissioner of the New York State Office of Mental Health, et al., Respondents.

Third Department, December 29, 1983

### APPEARANCES OF COUNSEL

*Nesbitt & Nesbitt* (*John B. Nesbitt* of counsel), for appellants.

*Robert Abrams, Attorney-General* (*Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

*Arlene Hughes* for Mental Health Information Service, *amicus curiae.*

OPINION OF THE COURT

MAHONEY, P. J.

Pursuant to section 7.33 of the Mental Hygiene Law, petitioner Board of Visitors of the Rochester Psychiatric Center was created to oversee the center and to investigate all cases of alleged patient abuse or mistreatment made against the director or any employee (Mental Hygiene Law, § 7.33, subd [h]). The Mental Health Information Service (MHIS) is charged with the protection of mental patients' rights (Mental Hygiene Law, § 29.09). In 1980, both of these bodies became aware of allegations of patient abuse, falsification of patient records, and serious allegations of neglect of duty by the director of the psychiatric facility (RPC). In December, 1980, respondent State Office of Mental Health (OMH), which is charged with the overall responsibility of furnishing services to the mentally ill (Mental Hygiene Law, § 7.01), began its own investigation into the operation of RPC.

The OMH investigation produced a report in March, 1981. When the Board of Visitors and MHIS expressed their dissatisfaction with the OMH report and presented further allegations of misconduct by the administration of RPC, OMH agreed to discuss the possible roles of the Board of Visitors and MHIS at a future meeting which would primarily be for the purpose of "providing OMH with additional information relating to the program or management of Rochester Psychiatric Center that [the] Board and MHIS representatives indicated they possessed". An impasse developed when the Board of Visitors, rather than relinquish control to OMH, decided to explore the possibilities of an independent investigation.

On May 1, 1981, the Board of Visitors requested respondent State Commission on Quality of Care for the Mentally Disabled (commission) to provide counsel for the contemplated investigation. The commission declined.[1] Thereafter, the Board of Visitors asked OMH to contract with a Rochester attorney selected by the Board of Visitors. When OMH refused, the Board of Visitors commenced this CPLR article 78 proceeding to compel respondents to release

---

1. Petitioners concede in their brief that respondent commission need only provide staff and assistance to a Board of Visitors, not funds.

State funds to underwrite legal and stenographic expenses. MHIS filed an *amicus curiae* brief. Special Term held that the Board of Visitors had no authority to retain counsel or employ a stenographer without OMH's approval and dismissed the petition. This appeal ensued.

■■ We are constrained to affirm the judgment below, albeit on grounds different from those relied upon by Special Term. We hold that petitioners Board of Visitors and the Association of Boards of Visitors of New York State Facilities for the Mentally Disabled lack capacity to institute this CPLR article 78 proceeding. We also hold that while the members of the Board of Visitors, individually, may have the capacity to sue, they lack the requisite standing to maintain this proceeding.

■ Turning first to the Board of Visitors' capacity to sue, we note that the Court of Appeals in *Matter of Flacke v Freshwater Wetlands Appeals Bd.* (53 NY2d 537, 540) stated: "[W]e note our continued adherence to the principles set forth in *Matter of Pooler v Public Serv. Comm.* (58 AD2d 940, affd 43 NY2d 750), where it was held that the Executive Director of the State Consumer Protection Board did not have the capacity to commence an article 78 proceeding against the Public Service Commission * * * The Appellate Division [this department] there noted that although the Legislature had conferred upon the director of the board power to participate in certain rate cases before the commission, it did not confer authority upon the Consumer Protection Board or its director to maintain a suit."[2] Similarly, here, the Legislature has not seen fit to confer authority on the Board of Visitors to sue or be sued. Nothing in the Mental Hygiene Law expressly grants that authority to the Board of Visitors, and we cannot find it to exist by necessary implication from those powers which the Legislature saw fit to set forth in section 7.33 of the Mental Hygiene Law. Subdivision (h) of section 7.33 confers upon the board the power to investigate all charges against the

---

**2.** In 1978, a new Law (L 1978, ch 120) was enacted authorizing the Consumer Protection Board to seek judicial review by article 78 proceeding of any final Public Service Commission order involving rate determinations. Thus, if *Matter of Pooler v Public Serv. Comm.* (58 AD2d 940) were decided today, a different result would obtain because of the express statutory grant to that board to seek review of a final order of the Public Service Commission.

director and all cases of alleged patient abuse or mistreatment made against any employee. In the conduct of any such investigation, the board shall have the power, in accordance with the CPLR, to subpoena witnesses and to compel their testimony. Once a year the board shall submit a report to the Governor and the commissioner.

We hold it is not necessary in order to carry out these powers that the board also have the power to sue (see *Matter of Adirondack Park Local Govt. Review Bd. v Adirondack Park Agency,* 89 AD2d 642). The specific grant to the board is to investigate and report to the Governor and commissioner. The power to use the courts for that purpose limits rather than expands the authority of the board to sue. If the Legislature intended to expand the grant of authority to the board to review final orders of OMH, it would have so stated. It did not. Further, here the Board of Visitors seeks not to review any final order, but by way of mandamus to compel OMH to release State funds to reimburse it for legal and stenographic expenses in connection with its investigation of RPC. Mandamus is a proper vehicle to compel the performance of a duty which is merely ministerial in nature and involves no exercise of judgment or discretion. Mandamus is designed to require performance of a positive duty, not a discretionary one or, as here, a doubtful one.

Next, we conclude that while the individual members of the Board of Visitors have the capacity to sue, they lack the requisite standing to maintain this CPLR article 78 proceeding. All individuals, with the exception of infants and incompetents, have the capacity to sue, provided they are aggrieved by the individual or body against whom the action is brought. Here, a careful reading of the petition fails to reveal any allegation by any board member that he has paid or will be exposed to future liability for actually incurred legal or stenographic expenses.

Having concluded that the Board of Visitors lacks capacity to sue and the individual members of the board lack standing to maintain this article 78 proceeding, we do not reach any other issue.

The judgment should be affirmed, without costs.

KANE, J. (concurring). I agree with the majority that the Board of Visitors lacked the capacity to sue and that the individual board members lacked the requisite standing to maintain this CPLR article 78 proceeding. However, I take this opportunity to comment upon the questionable conduct of respondent State Commission on Quality of Care for the Mentally Disabled (commission).

Pursuant to section 45.07 of the Mental Hygiene Law, the commission is directed to: "Provide staff and other necessary assistance *upon request* to boards of visitors of department facilities in performing their duties pursuant to law" (Mental Hygiene Law, § 45.07, subd [e], par 2 [emphasis added]). There can be no dispute that in the present situation the board, while attempting to fulfill its statutory duties (see Mental Hygiene Law, § 7.33) requested necessary assistance from the commission. This request, made pursuant to section 45.07, was not honored by the commission. Such action, which inevitably forced the board to secure outside counsel, is contrary to the requirements of section 45.07 (subd [e], par 2) of the Mental Hygiene Law. The action by the commission particularly troubles me since the record demonstrates that the commission was simply unwilling to fulfill its statutory obligation.

SWEENEY, MIKOLL and LEVINE, JJ., concur with MAHONEY, P. J.; KANE, J., concurs in a separate opinion.

Judgment affirmed, without costs.