OPINION OF THE COURT
 

 Titone, J.
 

 Petitioner, a community board established by the New York City Charter (NY City Charter § 2800), brought the present proceeding to challenge respondents’ right to deny it access to certain documents under the New York State Freedom of Information Law (FOIL). The only issue on this appeal is whether petitioner, a legislatively created entity, has the capacity to maintain a proceeding such as this. In holding that it does not, we stress that the question of petitioner’s capacity to sue is a matter allied with but conceptually distinct from the question of its standing and that, in this case, the standards for establishing the former were not satisfied.
 

 Petitioner community board represents a district in Manhattan that encompasses the Penn Central railyards, a tract that runs between the Hudson River and West End Avenue and is bounded by West 59th and West 72nd Streets. Under the City Charter’s Uniform Land Use Review Procedure (ULURP), petitioner’s responsibilities include studying proposed changes in land use within its district and making recommendations to the Borough President and City Planning Commission regarding such proposals (NY City Charter § 197-c [e]).
 

 In 1990, petitioner wrote to the Department of City Planning requesting certain material that had been prepared in connection with a proposal to erect "Trump City,” a massive office, residential and commercial complex, on the Penn Central railyards tract. Because the proposal entailed zoning and land use changes, the project was subject to ULURP review
 
 (see,
 
 NY City Charter § 197-c). In seeking the project’s draft
 
 *153
 
 "restrictive declaration” and all correspondence relating to it,
 
 [1]
 
 petitioner invoked the Freedom of Information Law (Public Officers Law §§ 84-90), which requires government agencies to provide the public with access to their records except in certain enumerated circumstances.
 

 The Planning Department’s Records Access Officer denied petitioner’s FOIL request, asserting that the documents sought were exempt "inter-agency” or "intra-agency” materials and that their disclosure would "impair present or imminent contract awards or collective bargaining negotiations”
 
 (see,
 
 Public Officers Law § 87 [2] [c], [g]). This determination was subsequently upheld by the Department’s Appeals Officer
 
 (see,
 
 Public Officers Law § 89 [4] [a]).
 

 The Department’s decision prompted petitioner to commence the present CPLR article 78 proceeding to compel respondents to disclose the requested material. In support of its position, petitioner cited the provisions of FOIL, as well as the provisions of ULURP and the City Charter that authorize its participation in land use decisions such as this one (NY City Charter § 197-c [e]; § 2800 [d] [3], [17]; [e]). Respondents then moved for dismissal of the petition, arguing that petitioner did not have the "capacity” under the City Charter to bring a judicial challenge to the Planning Department’s FOIL decision.
 

 The Supreme Court rejected respondents’ dismissal motion, concluding that petitioner had “standing” to sue. Noting that petitioner was seeking only the limited relief of document disclosure rather than "ultimate or complete relief,” the court distinguished prior cases holding that community boards lack the requisite capacity to bring suit (150 Misc 2d 770, 774). Reaching the merits, the Supreme Court granted the petition, concluding that petitioner was entitled to disclosure of the requested documents.
 

 The Appellate Division upheld the Supreme Court’s decision, reasoning that petitioner’s request for relief was " 'within the zone of interest to be protected’ by New York City Charter § 197-c (e)” and that "there [was] no clear legislative intent to negate review of respondents’ denial of access to
 
 *154
 
 the records” (183 AD2d 422). Following judicial resolution of petitioners’ outstanding request for attorney fees
 
 (see,
 
 Public Officers Law § 89 [4] [c]), the Supreme Court rendered final judgment in favor of petitioner, and this Court granted respondents’ motion for leave to appeal.
 
 [2]
 
 The appeal brings up for review the Appellate Division’s prior nonfinal order.
 

 Initially, we note that we do not deem it appropriate to dismiss the proceeding for mootness, despite the facts that the Trump City proposal has been scaled down to the less ambitious Riverside South project, petitioner has completed its review of the project and submitted its recommendations and the FOIL request for documents has been withdrawn. The issue presented here — whether a community board has the capacity to bring an article 78 proceeding to enforce its ostensible FOIL rights — is one that is likely to recur, particularly in view of the community boards’ responsibilities under ULURP. Moreover, the issue is one that will typically evade review because of the relatively short time frame in which those responsibilities must be carried out
 
 (see,
 
 NY City Charter § 197-c). Finally, the issue is both novel and substantial, since it has not yet been considered by this Court and has unquestionable significance for the way in which land use decisions are made within New York City. Thus, the exception to the mootness doctrine that was delineated in
 
 Matter of Hearst Corp. v Clyne
 
 (50 NY2d 707, 714-715) is applicable.
 

 Having concluded that the proceeding need not be dismissed for mootness, we turn now to the question presented by the parties for our review: whether petitioner has capacity to bring this proceeding. We note at the outset that the concept of capacity is often confused with the concept of standing, but the two legal doctrines are not interchangeable
 
 (see, Matter of Pooler v Public Serv. Commn.,
 
 58 AD2d 940,
 
 affd on mem below
 
 43 NY2d 750;
 
 see also, Matter of Association of Bds. of Visitors of N. Y. State Facilities for Mentally Disabled v Prevost,
 
 98 AD2d 260). "Standing” is an element of the larger question of "justiciability”
 
 (see, Society of Plastics Indus. v County of Suffolk,
 
 77 NY2d 761, 769;
 
 Matter of Dairylea Coop. v Walkley,
 
 38 NY2d 6, 9). The various tests that have been devised to determine standing are designed to
 

 
 *155
 
 ensure that the party seeking relief has a sufficiently cognizable stake in the outcome so as to "cast[ ] the dispute 'in a form traditionally capable of judicial resolution’ ”
 
 (Society of Plastics Indus. v County of Suffolk, supra,
 
 at 772-773, quoting
 
 Schlesinger v Reservists to Stop War,
 
 418 US 208, 220-221;
 
 see, Schieffelin v Komfort,
 
 212 NY 520, 530). Often informed by considerations of public policy
 
 (Society of Plastics Indus, v County of Suffolk, supra,
 
 at 769), the standing analysis is, at its foundation, aimed at advancing the judiciary’s self-imposed policy of restraint, which precludes the issuance of advisory opinions
 
 (see generally, Cuomo v Long Is. Light. Co.,
 
 71 NY2d 349, 354).
 

 "Capacity,” in contrast, concerns a litigant’s power to appear and bring its grievance before the court. The concept of a lack of capacity, which has also occasionally been intermingled with the analytically distinct concept of a failure to state a cause of action, does not admit of precise or comprehensive definition
 
 (see, Ward v Petrie,
 
 157 NY 301; 4 Weinstein-KornMiller, NY Civ Prac |f 3211.17). Capacity, or the lack thereof, sometimes depends purely upon a litigant’s status. A natural person’s status as an infant, an adjudicated incompetent or, formerly, a felony prisoner, for example, could disqualify that individual from seeking relief in court
 
 (see, Kittinger v Churchill Evangelistic Assn.,
 
 239 App Div 253;
 
 Garner v Garner,
 
 59 Misc 2d 29; CPLR 1201;
 
 but see,
 
 Civil Rights Law § 79 [2]; § 79-a [2] [removing disqualification of felony prisoners to sue in court]). Additionally, the capacity question has often arisen in connection with controversies involving trustees
 
 (see,
 
 Siegel, NY Prac § 261 [2d ed]).
 

 Another category of capacity problems — the category at issue here — arises in the context of suits brought by artificial entities. Business corporations, for example, are creatures of statute and, as such, require statutory authority to sue and be sued
 
 (see,
 
 Business Corporation Law § 202 [a] [2];
 
 see also,
 
 § 1005 [a] [1]; § 1006 [a] [4] [dissolved corporations]; § 1312 [foreign corporations doing business in New York]). Similarly, unincorporated associations, which are voluntary congregate entities, are accorded the capacity to bring suit through their presidents or treasurers by statute (General Association Law § 12;
 
 see, Ayew v Hawes & Co.,
 
 250 App Div 596).
 

 Governmental entities created by legislative enactment present similar capacity problems. Being artificial creatures of statute, such entities have neither an inherent nor a common-
 
 *156
 
 law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate
 
 (Matter of Pooler v Public Serv. Commn., supra; see, Matter of Flacke v Freshwater Wetlands Appeals Bd.,
 
 53 NY2d 537 [analyzing agency’s capacity to sue, although using the term "capacity” interchangeably with "standing”]). The principle is a well-known one, originating in the more general canon that "a creature of the State * * * has no power other than that given it by the Legislature, either explicitly or by necessary implication”
 
 (Matter of B. T. Prods, v Barr,
 
 44 NY2d 226, 236, citing
 
 Matter of Pooler v Public Serv. Commn., supra; see, e.g., Matter of Department of Personnel v New York City Civ. Serv. Commn.,
 
 79 NY2d 806, 807).
 

 In a recent discussion on the subject,
 
 Matter of City of New York v City Civ. Serv. Commn.
 
 (60 NY2d 436), we considered
 
 both
 
 the standing
 
 and
 
 the capacity of a governmental agency to bring an article 78 proceeding against another governmental entity.
 
 [3]
 
 With respect to the capacity question, we stated that the authority of a government agency to bring suit does not require "that in every instance there be express legislative authority”
 
 (id.,
 
 at 444-445). Rather, the capacity to sue may also be inferred as a "necessary implication from [the agency’s] power[s] and responsibilities],” provided, of course, that "there is no clear legislative intent negating review”
 
 (id.,
 
 at 443, 444). The Court indicated in
 
 City of New York
 
 that the power to bring a particular claim may be inferred when the agency in question has "functional responsibility within the zone of interest to be protected”
 
 (id.,
 
 at 445, distinguishing
 
 Matter of Pooler v Public Serv. Commn., supra).
 
 Notably, this "zone of interest” test is related but not identical to the "zone of interest” analysis that is traditionally applied in the allied area of standing
 
 (see, Matter of Dairylea Coop. v Walkley, supra; see also, Matter of Bradford Cent. School Dist. v Ambach,
 
 56 NY2d 158).
 

 It is the
 
 City of New York
 
 "zone of interest” test that also distinguishes this case from
 
 Community Bd. No. 4 v Board of Estimate
 
 (88 AD2d 832,
 
 affd on mem below
 
 57 NY2d 846), on which respondents place considerable reliance. In that case, the Court held that local community boards created pursuant
 
 *157
 
 to New York City Charter § 2800 lack the power to challenge substantive zoning determinations made by the responsible administrative authorities. Here, unlike the situation in
 
 Community Bd. No. 4,
 
 petitioner board is not challenging a substantive decision by the City to approve or disapprove a land development proposal. Rather, it is contesting a decision by the City Planning Department to deny it access to certain documents which, arguably, might be useful in carrying out its statutorily mandated responsibility to study the land use proposal and to make appropriate recommendations to the Borough President and Planning Department
 
 (see,
 
 NY City Charter § 197-c [d], [e], [m]; § 197-d [b] [2]; § 668 [a] [1], [2], [7]). Given that fundamental mandate, it cannot be said that petitioner board does not have "functional responsibility” within the sphere to be protected by ULURP, the law on which this particular judicial challenge is primarily based
 
 (see, Matter of City of New York v City Civ. Serv. Commn., supra,
 
 at 445).
 

 Nonetheless, petitioner’s lack of capacity to bring this suit may readily be inferred from the terms and history of its own enabling legislation, as well as from its limited role in the land use planning process. Petitioner does not dispute that neither New York City Charter § 2800 nor the relevant ULURP provisions expressly authorize community boards to bring suit. Nor can such authority be constructed as a "necessary implication” of petitioner’s other powers, since there are clear indications in the legislation that no authority to sue for document disclosure was, in fact, intended.
 

 The enabling statute gives community boards no power to retain independent counsel or to subpoena documents, despite a study group’s recommendation that the power to subpoena be conferred
 
 (see,
 
 Staff Report,
 
 Community Boards,
 
 prepared by Staff of State Charter Rev Commn for NY City [May 1974] [hereinafter Staff Report];
 
 see also,
 
 NY City Charter § 395;
 
 see generally, Caruso v New York City Police Dept. Pension Funds,
 
 72 NY2d 568, 575). Moreover, the City Charter’s ULURP provisions and their accompanying regulations are quite specific on the question of what documents a community board is entitled to receive in connection with its advisory role
 
 (see,
 
 NY City Charter § 197-c [b];
 
 see also, §
 
 197-c [i]; 62 RCNY 2-02 [a] [5]; [b] [1] [ULURP regulations]). The legislative choice to delineate the documents that are to be used and to deny subpoena power to community boards as a means of widening their inquiries suggests that these boards were not intended to
 
 *158
 
 have the even more encompassing power to compel wide-ranging document disclosure through judicial suits to enforce the rights conferred by the Freedom of Information Law.
 

 Additionally, the legislative history of the City Charter is inconsistent with the notion that community boards were intended to have the power to sue for information. As part of the over-all 1975 Charter revision process, a study group created by the nonpartisan State Charter Revision Commission for New York City noted in its report a suggestion that a grant of the power to sue City agencies would be helpful to the community boards. The report also noted that a prior opinion by Corporation Counsel had construed the then-existing New York City Charter § 84 — the sole potential source of authority
 
 [4]
 
 5 — as not encompassing the power to sue
 
 (see,
 
 Staff Report,
 
 op. cit.,
 
 at 90, n 34). Despite these observations, as well as a recommendation by the study group itself that community boards be empowered to sue (Staff Report,
 
 op. cit.,
 
 at 94-105, 133-134), the power to sue was not included either in the Charter Commission’s Preliminary Recommendations or in the final proposed Charter amendments
 
 (see,
 
 Preliminary Recommendations of State Charter Rev Commn,
 
 City Government in the Community,
 
 Majority Recommendations, at 221-224 [June 1975]; Proposed Amendments to Charter for City of NY by State Charter Rev Commn, at 418-421 [Aug. 1975]; Final Report of State Charter Rev Commn, at 13, 27 [1975]).
 

 Under these circumstances, the reenactment of former section 84 (i) in essentially the same terms under the present section 2800 (e),
 
 [5]
 
 is indicative of a legislative intent
 
 not
 
 to authorize community boards to bring independent judicial actions as a means of obtaining desired document disclosure. As drafted both before and after the Charter’s revision, the provision merely directs City agencies to comply with community boards’ pertinent requests for assistance and information. The adoption of this provision without substantive change should be viewed in light of the existing decisional law, with which the Legislature is presumed to be familiar
 
 (see, Williams v Niske,
 
 81 NY2d 437, 443;
 
 Matter of Alonzo M. v New York City Dept. of Probation,
 
 72 NY2d 662, 667;
 
 Matter of
 
 
 *159
 

 Knight-Ridder Broadcasting v Greenberg,
 
 70 NY2d 151, 156-157). That decisional law includes not only the opinion of Corporation Counsel that was explicitly referred to in the Staff Report (Opn No. 107,518), but also a contemporary appellate court decision holding that community boards lack capacity to sue
 
 (Community Planning Bd. No. 2 v Board of Stds. & Appeals,
 
 43 AD2d 670). The choice not to alter the existing language when the Charter was revised suggests legislative approval of these constructions
 
 (see, Matter of Knight-Ridder Broadcasting v Greenberg, supra,
 
 at 157).
 

 Finally, the power to bring the instant proceeding cannot be derived by "necessary implication” from the community boards’ ULURP responsibilities, which are purely advisory in nature. Unlike the policing function at issue in
 
 Matter of City of New York v City Civ. Serv. Comma, (supra,
 
 at 444), the boards’ far more limited advisory mission can readily be accomplished without according them the right to obtain whatever documents they want through a plenary judicial proceeding brought under FOIL. That conclusion is particularly apt where, as here, there is no claim that the documents referred to in New York City Charter § 197-c (b) and (i) and the accompanying ULURP regulations (62 RCNY 2-02 [a] [5]; [b] [1]) were not furnished.
 

 For all of these reasons, we conclude that petitioner does not have the capacity to maintain the present article 78 proceeding. That conclusion obtains notwithstanding the provisions of Public Officers Law § 89 (4) (b), which confer standing upon any person denied access to government records. The Freedom of Information Law’s generous standing provisions may cast a net that is wide enough to encompass petitioner. Irrespective of its standing, however, a governmental entity such as petitioner must be able to show that it has the capacity to institute suit. Since that showing was not made here, the petition should have been dismissed.
 

 Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . A "restrictive declaration” is an instrument that describes a proposed development and the method by which it is to be completed. After the ULURP process has been completed and a proposed project has been approved, the declaration is filed in the office of the County Clerk and becomes a public document of record.
 

 [2]
 

 . Respondents’ motion for leave to appeal from the prior Appellate Division order was dismissed because the order sought to be appealed did not finally determine the proceeding within the meaning of the Constitution (80 NY2d 972).
 

 [3]
 

 . Although the Court used only the term "standing,” it is evident from the opinion’s discussion that the distinct concepts of "standing” and "capacity” were separately considered.
 

 [4]
 

 . Former section 84 (i) provided that City agencies were to give community boards "such information necessary for their work which they shall require.”
 

 [5]
 

 . Section 2800 (e), which appears in the present New York City Charter, provides that an agency is to "furnish promptly” to a board "on request any information or assistance necessary for the board’s work.”