■ COALITION AGAINST LINCOLN WEST, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents. [617 NYS2d 744] —Judgment, Supreme Court, New York County (Martin Evans, J.), entered March 11, 1994, which, in a proceeding pursuant to CPLR article 78 to rescind three resolutions of the City Council amending the city map, amending the zoning map, and granting special permits with respect to the proposed Riverside South development, denied the application and dismissed the petition, unanimously affirmed, without costs.

There is no merit to petitioners' argument that the City Planning Commission could not certify the developer's applications as complete without a draft of the so-called restrictive declaration, in which the developer agreed to undertake certain measures in mitigation, or that it was obliged to submit this document to the Community Board prior to the commencement of the latter's 60-day review period. Nothing in the City Charter or in the Rules of the City of New York requires that a restrictive declaration, or any similar instrument, be provided with the application before the application may be certified as complete, or, for that matter, even at the

approval stage. It follows that the City Planning Commission, an independent body with wide leeway to determine which documents are necessary for completeness (NY City Charter § 197-c), had no responsibility to ensure the preparation of this instrument for review by the Community Board. Nor is the Community Board given any role under New York City Charter §§ 2800 and 197-c that is more than advisory in nature *(see, Community Bd. 7 v Schaffer,* 84 NY2d 148), and obviously cannot arrogate to itself powers of land use enforcement not provided by statute.

Since the amendment to the city map that had been approved for this site for a prior owner and a different proposal had never been filed, the restrictive declaration associated with that project never took effect and remained executory, and therefore was no legal impediment to the approval of the present, different, restrictive declaration. In any event, the City's cancellation of the 1982 restrictive declaration by the present declaration was otherwise valid since the prior declaration, with respect to its modification, amendment or cancellation, was not to run with the land.

Finally, we note with concern the City's projections, supported by data concerning the purported net decrease in wastewater flow from the catchment area into the designated North River facility, and the claim in the FEIS that the project will not cause the capacity limits set forth in the State Pollution Discharge Elimination System permit to be exceeded, notwithstanding a history of chronic permit violations and a present failure to comply with an outstanding consent order with the New York State Department of Environmental Conservation. However, upon review of the FEIS and supporting documents, including minutes of City Planning Commission sessions and testimony provided there by the Commissioner of the New York City Department of Environmental Protection, we find no indication that the data are spurious or that the projections are facially invalid, and accordingly defer to the expertise of the administrative agencies. The FEIS otherwise is sufficient.

In this regard, we reject petitioners' attempt to graft onto SEQRA an economic analysis, absent compelling evidence of a sham transaction or that financial sponsors are unwilling or unable to fulfill their obligations *(Matter of Nixbot Realty Assocs. v New York State Urban Dev. Corp.,* 193 AD2d 381, *lv denied* 82 NY2d 659).

We have considered petitioners' remaining contentions and

find them to be without merit. Concur—Carro, J. P., Rosenberger, Ellerin, Nardelli and Tom, JJ.