*720 OPINION OF THE COURT
Richard M. Platkin, J.
Petitioner, the Inmate Liaison Committee (ILC) of Elmira Correctional Facility, brings this CPLR article 78 application seeking to challenge certain administrative determinations made by respondent Brian Fischer, the Commissioner of the Department of Correctional Services (DOCS), relating to the alleged lack of adequate television reception and Spanish language television programming on in-cell televisions at the facility.
Respondent moves to dismiss the petition, contending that the ILC lacks the legal capacity to maintain this proceeding. Respondent argues that there is no express authority for an ILC to prosecute a judicial action, particularly one against the State, and that such capacity to sue cannot be implied from the ILC’s powers and responsibilities.
As the Court of Appeals explained in Silver v Pataki (96 NY2d 532, 537 [2001]),
“Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity ‘concerns a litigant’s power to appear and bring its grievance before the court’ (Community Bd. 7 v Schaffer, 84 NY2d 148,155). Capacity may depend on a litigant’s status or ... on authority to sue or be sued. In Community Bd. 7, we noted that capacity may be expressly conferred or ‘inferred as a “necessary implication from [the agency’s] power[s] and responsibilities],” provided, of course, that “there is no clear legislative intent negating review” ’ (id. at 156 [quoting Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 443-444, rearg denied 61 NY2d 759]).”
The ILC was established pursuant to New York State Department of Correctional Services Directive No. 4002 (the Directive). The purpose of an ILC is to promote “[effective communications between inmates and administration for accurate dissemination and exchange of information” and to “facilitate consideration and analysis of suggestions from inmates relative to facility operations” (Directive No. 4002 [I] [A], [B]). Each facility “Superintendent is to establish an Inmate Liaison Committee which is limited to discussing and advising institutional officials on matters concerning the general welfare of the inmate population” (id. [II] [A] [1] [emphasis added]). “The Inmate Li *721 aison Committee should have considerable freedom in the choice of topics for discussion, but it is not to have administrative responsibility in the execution of any proposed project or program . . . [A] dministrative responsibility for any suggested project must still remain with facility personnel” (id. [II] [C] [1] [emphasis added]).
Petitioner appears to acknowledge, as it must, that there is no express authority in law, rule, regulation or administrative directive for an ILC to maintain a civil action. However, petitioner argues that such power is a “necessary implication” of the ILC’s powers and responsibilities. In support of this contention, petitioner directs the court’s attention to DOCS Directive No. 4556, which purportedly grants the ILC authority to contract for premium television channels, and DOCS Directive No. 2771, which purportedly authorizes the ILC to disburse funds for payment for various items, including premium television channels. Further, petitioner points to DOCS Directive No. 4040, codified at 7 NYCRR 701.3 (d), which recites that when grievances are raised in terms of class actions, they should be referred to the facility ILC.
The court concludes that respondent’s motion to dismiss the petition for lack of capacity to sue must be granted. The Directive clearly establishes the ILC as an advisory body created for the purpose of facilitating communication between inmates and correction officials. The Directive further provides that an ILC has no executive or administrative authority, except as may be permitted by “institutional management.” And even in such cases, administrative responsibility “must still remain with facility personnel.” Under these circumstances, a capacity to sue cannot reasonably be implied from the ILC’s powers and responsibilities and, in fact, is negated (see Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994] [lack of capacity to bring suit inferred from terms and history of New York City Charter provision that established petitioner 8ommunity board]).
Further, while petitioner cites to certain other DOCS directives, it failed to include these directives in the record before the court on this application.* The court has, however, examined 7 NYCRR 701.3 (d), which petitioner claims is a codification of *722 Directive No. 4040, but concludes that this regulation does not provide a basis for implying the capacity to sue. The regulation, which governs inmate grievances, provides that class actions are not accepted and that “ [grievances which are raised in terms of class actions should be referred to the inmate liaison committee” (7 NYCRR 701.3 [d]). The court does not interpret this language to mean that an ILC may prosecute administrative or judicial grievances on behalf of a class of inmates; rather, when read together with the Directive, the regulation manifests an intent that grievances affecting a large number of inmates should be referred to the ILC for the purpose of engaging correction officials in a dialogue aimed at resolving the shared grievance.
The court has considered petitioner’s remaining arguments and finds them to be without merit. Accordingly, respondent’s motion to dismiss is granted, and the petition is dismissed.

 To the extent that other DOCS directives do, in fact, authorize the ILC to undertake administrative or executive functions, such directives are not inconsistent with Directive No. 4002 (II) (C) (1), which permits institutional management to authorize an inmate group to carry out a project or proposal, *722 so long as ultimate responsibility remains with facility personnel. There is no claim here that institutional management authorized the prosecution of this lawsuit.