This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 98
Excess Line Association of New
York (ELANY),
              Appellant,
         v.
Waldorf & Associates, et al.,
              Respondents,
et al.,
              Defendants.


              David B. Hamm, for appellant.
              Michael D. Brown, for respondents.




STEIN, J.:

         On this appeal, we are asked to decide whether Excess

Line Association of New York (ELANY) -- a legislatively created

advisory association under the supervision of the Department of

Financial Services (DFS) -- has capacity to sue its members to

recover fees that it is statutorily authorized to receive, and to

                            - 1 -

compel an accounting to determine amounts allegedly owed.  We hold that it does not.

-I-

Excess line insurance policies are issued by foreign insurers not authorized to do business in this state.  Such policies are procured by licensed excess line brokers to cover risks that authorized carriers will not insure.  As relevant here, the Insurance Law requires excess line brokers to remit to DFS taxes on excess line insurance premiums charged, submit to ELANY a document containing basic information for each excess line policy brokered, and pay to ELANY a stamping fee that is calculated based upon the policy's premium (see Insurance Law §§ 2118 [b] [1], [b] [3], [d]; 2130 [f]).

ELANY was created as an "advisory" association, pursuant to Insurance Law § 2130 (a), in order to facilitate compliance with the many filing and record keeping requirements for excess line brokers contained in the Insurance Law (L 1998, ch 630, § 1).  "All excess line licensees shall be deemed to be members of [ELANY]" (Insurance Law § 2130 [a]).  Under ELANY's enabling statute, it is required to "perform its functions under [a] plan of operation . . . approved [by DFS]" and to "be supervised by [DFS]" (id.).  Section 2130 enumerates ELANY's limited powers and duties, which include the authority and obligation to receive, record, and stamp all excess line insurance documents filed by excess line brokers.  The stamping

fees required to be paid by members that submit excess line insurance documents to ELANY are ELANY's sole source of funding (see id. § 2130 [f]).  ELANY's plan of operation provides that "[a]ny member who is more than 30 days delinquent in the payment of [stamping] fees may be reported to [DFS] . . . [and] any delinquency of more than 60 days shall be reported to [DFS] . . . " (see also 11 NYCRR 27.7 [a] [2] [requiring ELANY to submit bi-monthly reports identifying excess line brokers that failed to comply with any part of the excess line regulations or Insurance Law § 2118]).

Defendants are a third-generation, family-owned and operated insurance brokerage firm and consortium which, for many years, operated an "independent" or "direct" placement insurance program involving placement of insurance directly with syndicates at Lloyd's of London.  In 2010, defendants sought review and approval of their direct placement program by the Department of Insurance (now DFS and, collectively, the "Department").  The Department determined that certain of the placements should have been classified as excess line placements, subject to the premium tax required by Insurance Law § 2118 and the accompanying regulations (11 NYCRR 27 [Regulation 41]).  Defendants subsequently entered into a settlement agreement with the Department, pursuant to which defendants agreed to pay approximately $3.4 million in premium taxes, penalties and interest for placements made from 1995 through 2009.  Defendants

also agreed to operate the Lloyd's of London direct placement

program as an excess line program commencing in 2010.  The

agreement provided that full compliance with these obligations

would

> "be accepted by the Department in full settlement of
> [defendants'] premium tax liability . . .  [and] in lieu of
> any disciplinary action that could be taken by the
> Department against [defendants] . . .  in connection with
> the failure to pay premium taxes or otherwise comply with
> the provisions of Section 2118 of the Insurance Law and
> Department Regulation 41."

The agreement did not require defendants to pay ELANY the

stamping fees associated with the improperly classified insurance

placements.

In 2011, ELANY commenced the instant action against

defendants seeking, among other things, to recover stamping fees

for excess line policies allegedly procured from 1989 through

2011 and to enforce its purported right to conduct an examination

and accounting pursuant to the Insurance Law.  Supreme Court

granted defendants' motions to dismiss, concluding that ELANY

lacked capacity to sue (see 40 Misc 3d 759 [Sup Ct, Suffolk

County 2013]).  On ELANY's appeal, the Appellate Division

affirmed, reasoning that "[c]ontrary to ELANY's contention, none

of the provisions of the [ELANY enabling] statute confers upon it

by necessary implication the capacity to sue to enforce the

provisions of the Insurance Law" (130 AD3d 563, 565 [2d Dept

2015]).  We granted ELANY leave to appeal (27 NY3d 901 [2016]).

-II-

This Court has explained that "[c]apacity to sue is a threshold question involving the authority of a litigant to present a grievance for judicial review" (Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs., 5 NY3d 36, 41 [2005]). Capacity is examined with a view towards the relief sought (see Matter of Graziano v County of Albany, 3 NY3d 475, 480 [2004]), and is often at issue where, as here, governmental entities seek to bring suit (see Matter of Town of Riverhead, 5 NY3d at 41). "Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155-156 [1994]). However, while the right must be derived from statute, "[a]n express grant of authority is not always necessary," and "capacity may be inferred as a necessary implication from the powers and responsibilities of a governmental entity, 'provided, of course, that there is no clear legislative intent negating review'" (Matter of Town of Riverhead, 5 NY3d at 42, quoting Community Bd. 7, 84 NY2d at 156).

In Community Bd. 7, this Court addressed whether a legislatively created community board had capacity to maintain a CPLR article 78 proceeding challenging a Freedom of Information

Law determination denying it access to certain documents (84 NY2d at 154). The board's statutorily imposed responsibilities included studying proposed changes in land use and making recommendations regarding such proposals to city officials (see id. at 152). We held that the board's lack of capacity could be "readily . . . inferred" from its limited role in the land use planning process and "the terms and history of its own enabling legislation" (id. at 157). There, the City Charter's Uniform Land Use Review Procedure provisions and their accompanying regulations specifically delineated documents to be used by the board and did not provide the board with any subpoena power, despite a study group's recommendation that the power to subpoena be conferred (id.). Moreover, this Court rejected the contention that the power to bring the proceeding was derived by "necessary implication" from the board's responsibilities, "which [were] purely advisory in nature" (id. at 159).

As in Community Bd. 7, the enabling statute at issue here does not expressly authorize the entity asserting capacity -- i.e. ELANY -- to sue for the relief sought (see Insurance Law § 2130). While the legislative history does not indicate -- as it did in Community Bd. 7 -- that the legislature considered and expressly rejected granting ELANY the capacity to sue to collect the stamping fees, the legislative history also does not provide any affirmative suggestion that the legislature intended to give ELANY capacity to sue. Therefore, we rely primarily on the

statutory scheme, as well as ELANY's own plan of operation.

As the courts below concluded, the statutory scheme evinces the legislature's intent that DFS be the primary enforcer of the Insurance Law and corresponding regulations (see Insurance Law § 109). With regard to excess line broker licenses specifically, the legislature gave DFS the authority to "suspend or revoke" such licenses as DFS believes "will best promote the interests of the people of this state" (id. § 2105 [a]). In addition, the legislature empowered DFS to impose various statutorily established monetary penalties which, if not paid, may be enforced by a civil action in court (see id. § 109 [c], [d]). The legislature also provided insureds aggrieved by certain specific conduct with private rights of action against agents and brokers (see e.g. id. § 2123 [d]).

In stark contrast to DFS's broad, explicit enforcement function, "ELANY's principal role is to act as a record keeper for excess line transactions" (Matter of Excess Line Assn. of N.Y. v Curiale, Sup Ct, NY County, Mar 25, 1994, Huff, J., index No. 134460/93, affd on mem below 209 AD2d 365 [1st Dept 1994]). The statutorily enumerated powers of ELANY relate to record keeping and education, rather than regulatory enforcement (see Insurance Law § 2130 [a]). Under these circumstances, a right to sue cannot be "derived from [ELANY's] enabling legislation or some other concrete statutory predicate" (Community Bd. 7, 84 NY2d at 156).

While section 2130 does designate ELANY as the recipient of the stamping fees, we reject ELANY's contention that capacity to sue for recovery of such fees can be inferred as a "necessary implication" from its responsibilities (Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 444 [1983]). Critically, ELANY is both supervised by DFS and required to "perform its functions" pursuant to a plan of operation approved by DFS (Insurance Law § 2130). That plan expressly establishes a method of enforcing the payment of stamping fees -- the relief that ELANY seeks here -- by providing that, when such fees go unpaid, ELANY's remedy is to report the matter to DFS. In other words, DFS has not authorized ELANY to seek recovery of unpaid stamping fees through a plenary action. Instead, the plan of operation -- which governs the scope of ELANY's authorized activities -- limits ELANY's remedy to reporting violations to DFS, further supporting the conclusion that ELANY does not have implied capacity to sue for the relief sought.[1]

Finally, the legislative history of the statute creating ELANY demonstrates that the legislature characterized ELANY as an "advisory association," not a regulator (L 1988, ch 630, § 1). Nor does the plan of operation indicate that DFS has

---

[1] The parties apparently agree that DFS could, if it wished to do so, approve an amendment to the plan of operation to allow ELANY to enforce the obligation of its members to pay stamping fees, subject to DFS's supervision. Under the circumstances here, we need not pass on the accuracy of this proposition.

found it necessary, in order for ELANY to carry out its advisory function, to "accord[] [ELANY] the right to [enforce the payment of stamping fees] through a plenary judicial proceeding" (Community Bd. 7, 84 NY2d at 159).  In short, the authority that ELANY urges this Court to recognize is negated by the nature of the responsibilities conferred upon ELANY, as established by the statutory structure, legislative history, and ELANY's plan of operation.  Therefore, the courts below correctly concluded that capacity to sue cannot be inferred here.

In view of the foregoing, ELANY's remaining contentions are academic.  Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order, insofar as appealed from, affirmed, with costs.  Opinion by Judge Stein.  Chief Judge DiFiore and Judges Fahey, Garcia, Wilson and Feinman concur.  Judge Rivera took no part.

Decided October 19, 2017