[720 NYS2d 254]

In the Matter of CITY OF OSWEGO, Appellant, v NEW YORK STATE BOARD OF REAL PROPERTY SERVICES, Respondent. (And Another Related Proceeding.)

Third Department, February 1, 2001

## APPEARANCES OF COUNSEL

*Hancock & Estabrook, L. L. P.,* Syracuse (*William L. Allen, Jr.,* of counsel), for appellant.

*Eliot Spitzer, Attorney General,* Albany (*Robert M. Goldfarb* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

The Oswego City School District (hereinafter the District) is comprised of the entire area of petitioner and portions of the Towns of Sterling, Minetto, Oswego, Scriba and Volney in Oswego County. Where, as in the case of the District, a school district is located in more than one city or town, the district superintendent must determine the full valuation of the real property of each part of a city or town included in the school district by dividing the taxable assessed valuation of the real property in that part of the city or town by the State equalization rate established for the entire city or town (RPTL 1314 [1] [a]). The equalization rate to be utilized is the rate established by respondent for the assessment roll on which school taxes are to be levied (RPTL 1314 [1] [b]), but if no State equalization rate has yet been established for that roll (which is generally the case with school districts), the equalization rate established for the previous year's roll may be utilized (RPTL 1314 [1] [b]).

Petitioner's equalization rate for 1998 was 188.35%, primarily because a Niagara Mohawk steam plant, which represented approximately 50% of the estimated market value of petitioner's real property, was assessed at nearly three times its fair market value. After the filing of the 1998 assessment roll, but prior to the filing of the 1999 assessment roll, respondent became aware that the steam plant was going to become wholly

exempt from taxation due to its acquisition by an Industrial Development Agency. Because the steam plant property would not be included in the computation of petitioner's equalization rate for 1999, respondent concluded that utilization of the 1998 equalization rate would result in a significant understatement of petitioner's full taxable value and, consequently, of its proper share of the 1999-2000 District school tax apportionment. Respondent accordingly determined that the use of petitioner's 1998 rate would be patently inequitable, warranting the use of a 1999 special equalization rate calculated by removing the value of the steam plant from petitioner's 1998 equalization rate data. Based upon a determination that petitioner's remaining property was assessed at 100% of full value, a 1999 special equalization rate of 100% was established.

In November 1999, petitioner commenced a CPLR article 78 proceeding in Supreme Court (proceeding No. 1) seeking to annul respondent's 1999 segment special equalization rate upon the grounds that respondent acted in excess of its statutory authority in establishing the rate and also failed to give petitioner adequate notice prior to establishing the rate. Proceeding No. 1 was ultimately dismissed for lack of subject matter jurisdiction, and petitioner appeals. In the meantime, petitioner initiated an essentially identical proceeding in this Court (proceeding No. 2) pursuant to RPTL 1218, contending that the plain language, legislative history and long-standing construction of RPTL 1314 (2) compel the conclusion that respondent acted in excess of its jurisdiction in establishing a segment special equalization rate of 100% for the entire area of petitioner. We agree.

RPTL 1314 (2) provides in pertinent part as follows:*

> "[1] If it is made to appear to [respondent] *by a statement of the assessors of the city or town* * * * that there has been a change in the level of assessment since the last state equalization rate for the city or town was established, or,

> "[2] if it is made to appear to [respondent] that the state equalization rate established by it for a city or town is inequitable as applied to real property within the school district in such city or town,

> "[3] [respondent] shall determine a special equaliza-

---

* We have divided the critical language into three separate numbered paragraphs as an aid to our analysis.

tion rate *for such city or town or for such real property, as the case may be,* which shall be used for the sole purpose of equalization under this section" (emphasis supplied).

As can be seen, RPTL 1314 (2) provides recourse for two entirely different species of inequity. The first, set forth in paragraph [1] above, operates in cases where, due to an intervening change in the level of assessment, the last State equalization rate for the city or town is no longer accurate. Notably, the condition addressed in paragraph [1] would apply with equal force to an entire municipality or to a segment of a municipality contained within a school district, and a specific triggering event is provided, i.e., a statement of the local assessors concerning the change in the level of assessment. In contrast, the paragraph [2] scenario could apply only when a portion of a city or town is contained within a school district and the ratio of assessed value to full value of the properties contained in that portion is for some reason at variance with the State equalization rate for the entire municipality. Unlike paragraph [1], paragraph [2] provides no specific triggering mechanism, thereby permitting respondent to take action on its own initiative. In either event, the ultimate recourse, as provided for in paragraph [3], is respondent's determination of a special equalization rate, for the entire city or town in the case of a paragraph [1] inequity or just the segment of the city or town contained within the subject school district, which could take place under either paragraph [1] or paragraph [2], as the case may be.

Interestingly, although the present case would appear to fit squarely within the situation addressed in paragraph [1], respondent's analysis ignores the existence of that portion of RPTL 1314 (2), assumably because the paragraph [1] triggering event did not occur. Instead, respondent attempts to force the present fact pattern within paragraph [2], which has no triggering mechanism. The law is well settled, however, that paragraph [2] "provid[es] a remedy only where the equalization rate for a city or town as a whole is not representative of the portion of the city or town located within a school district" (*Matter of Wisseman v New York State Bd. of Equalization & Assessment,* 212 AD2d 196, 199, *lv denied* 87 NY2d 804; *see,* 9 NYCRR 186-5.3 [b] [3]). "In other words, relief in the form of a segment special equalization rate is only granted where the over-all equalization rate of a city or town does not accurately reflect property values within a particular segment of a city or

town" (*Matter of Wisseman v New York State Bd. of Equalization & Assessment, supra,* at 199). Obviously, that is not the case here.

Nor are we persuaded that we should annul the long-standing prior construction of RPTL 1314 (2), which we adopted at respondent's urging in *Matter of Wisseman v New York State Bd. of Equalization & Assessment (supra),* and, once again recognizing respondent's expertise in this intricate and complex area, adopt a diametrically opposing one. Contrary to respondent's contention, no reasonable reading of paragraph [2] permits its application to an entire municipality. Notably, the language "for such city or town or for such real property, as the case may be" of paragraph [3] merely recognizes that paragraph [1] will permit a special assessment rate in an entire city or town. Only when one ignores the existence of paragraph [1], as respondent has in this case, does that language appear to suggest that paragraph [2] may apply to an entire city or town.

Respondent's remaining contentions have been considered and found to be unavailing. In view of our determination to grant the petition in proceeding No. 2, we need not consider whether Supreme Court erred in dismissing proceeding No. 1 or whether petitioner was given adequate notice of respondent's intention to establish a segment special equalization rate.

CARDONA, P. J., CREW III, PETERS and ROSE, JJ., concur.

Ordered that the appeal in proceeding No. 1 is dismissed, as academic, without costs.

Ordered that the petition in proceeding No. 2 is granted, without costs, and petitioner is granted judgment annulling respondent's determination establishing a segment special equalization rate of 100% for the purpose of apportioning petitioner's share of the 1999-2000 Oswego City School District tax.