[832 NE2d 1169, 799 NYS2d 753]

In the Matter of TOWN OF RIVERHEAD, Appellant, et al., Petitioner, v NEW YORK STATE BOARD OF REAL PROPERTY SERVICES et al., Respondents.

Argued May 3, 2005; decided June 9, 2005

## POINTS OF COUNSEL

*Scott DeSimone,* Peconic, for appellant. Appellant Town of Riverhead has capacity and standing to seek judicial review of respondent New York State Board of Real Property Services' determination establishing a segment special equalization rate for the Town of Southampton segment of the Riverhead Central School District. (*Matter of Graziano v County of Albany,* 3 NY3d 475; *City of New York v State of New York,* 86 NY2d 286; *Community Bd. 7 of Borough of Manhattan v Schaffer,* 84 NY2d 148; *Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436; *Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y.,* 282 AD2d 166; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1; *Matter of Colella v Board of Assessors of County of Nassau,* 95 NY2d 401; *Matter of Transactive Corp. v New York State Dept. of Social Servs.,* 92 NY2d 579; *Matter of Schulz v State of New York,* 81 NY2d 336; *Boryszewski v Brydges,* 37 NY2d 361.)

*Eliot Spitzer, Attorney General,* Albany (*Robert M. Goldfarb, Caitlin J. Halligan, Daniel Smirlock* and *Nancy A. Spiegel* of counsel), for New York State Board of Real Property Services, respondent. I. RPTL 1218 governs judicial review of the New York State Board of Real Property Services' determination of a segment special equalization rate. (*Matter of Town of Greenburgh v New York State Bd. of Real Prop. Servs.,* 275 AD2d 787; *Matter of Town of Middletown v State Bd. of Real Prop. Servs.,* 272 AD2d 657, 95 NY2d 761; *Matter of Nolan v Lungen,* 61 NY2d 788; *Matter of Fry v Village of Tarrytown,* 89 NY2d 714; *Matter of Majestic Collectibles v Spitzer,* 307 AD2d 296; *Matter of Reitman v Sobol,* 225 AD2d 823.) II. Petitioner Town of Riverhead lacks capacity and standing to sue under RPTL 1218 to challenge the New York State Board of Real Property Services' determination of a segment special equalization rate for a different municipality. (*Matter of Graziano v County of Albany,* 3 NY3d 475; *City of New York v State of New York,* 86 NY2d 286; *Community Bd. 7 of Borough of Manhattan v Schaffer,* 84 NY2d 148; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *People v Brancoccio,* 83 NY2d 638; *Matter of Colella v Board of Assessors of County of Nassau,* 95 NY2d 401; *Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d

436; *Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y.*, 282 AD2d 166; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761; *Matter of Axelrod v Sobol*, 78 NY2d 112.)

*Eileen A. Powers, Town Attorney*, Southampton, for Town of Southampton, respondent. Appellant Town of Riverhead lacks both capacity and standing to seek judicial review of respondent New York State Board of Real Property Services' determination establishing a special segment equalization rate for that segment of the Town of Southampton which is located within the Riverhead Central School District. (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148; *County of Albany v Hooker*, 204 NY 1; *Matter of Colella v Board of Assessors of County of Nassau*, 95 NY2d 401; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761; *Matter of Dairylea Coop. v Walkley*, 38 NY2d 6; *Matter of Axelrod v Sobol*, 78 NY2d 112; *Boryszewski v Brydges*, 37 NY2d 361; *Matter of Schulz v State of New York*, 81 NY2d 336; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579.)

*Riverhead Central School District*, respondent precluded.

*David O. Wright*, Yorktown Heights, for Sheldon Feiner and others, amici curiae. I. One town has standing to challenge another town's equalization rate under RPTL 1314. (*Matter of Town of Smithtown v Moore*, 11 NY2d 238; *Matter of Wisseman v New York State Bd. of Equalization & Assessment*, 212 AD2d 196, 87 NY2d 804; *Matter of City of Oswego v New York State Bd. of Real Prop. Servs.*, 280 AD2d 99, 96 NY2d 711.) II. Individual taxpayers have standing. (*Matter of Colella v Board of Assessors of County of Nassau*, 95 NY2d 401; *Matter of Dudley v Kerwick*, 52 NY2d 542.) III. Not allowing standing in this context raises constitutional questions. (*Killeen v New York State Off. of Real Prop. Servs.*, 253 AD2d 792; *Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801; *Stuart v Palmer*, 74 NY 183; *Foss v City of Rochester*, 65 NY2d 247.)

## OPINION OF THE COURT

GRAFFEO, J.

We are asked in this case to determine whether a town that is part of a school district may contest the segment special equalization rate set by the State Board of Real Property Services for another municipality in the same school district. Based on our review of the relevant statutes, we conclude that the

Town of Riverhead lacks capacity to bring this proceeding and therefore affirm the dismissal of the petition.

The levy and collection of school taxes for the support of public school districts is governed by the Real Property Tax Law. Where the boundaries of a school district are coterminous with a municipality, school authorities levy taxes based on the valuations of real property from the latest assessment roll of that city or town (see RPTL 1302 [1]).[1] But most of the school districts in New York State include all or portions of several municipalities. Hence, these school districts collect taxes from municipalities or segments of municipalities that may have varying levels of assessments. To effectuate the fair allocation of taxes among these municipalities, the State Board of Real Property Services is required annually to establish a state equalization rate for each municipality in the state (see RPTL 202 [1] [b]).[2] The state equalization rate is the ratio of the locally-determined assessed value of taxable real property within a municipality to the State Board's estimate of the true market value of that property (see RPTL 102 [19]; 1202 [1] [a]). In other words, the state equalization rate represents the percentage of true market value at which a municipality assesses its real property.

In order to apportion tax levies for a school district encompassing more than one municipality, the Real Property Tax Law directs a district superintendent to determine the full valuation of real property for each segment of the municipalities included in the school district by dividing the taxable assessed valuation of the real property in that part of the municipality by the state equalization rate established for the entire municipality (see RPTL 1314 [1] [a]). Where a municipality's state equalization rate does not accurately reflect the level of assessment within a particular segment of a school district (thereby resulting in a disproportionate tax burden), the State Board is authorized to calculate a special equalization rate for that segment (see RPTL 1226, 1314 [2]). The State Board may undertake such an adjust-

---

1. In New York, each municipality is authorized to assess property at market value or at some fraction of market value. Regardless of the level of assessment a municipality chooses, all assessments within the municipality are required to be a uniform percentage of market value (see RPTL 305 [2]).

2. State equalization rates are used for purposes other than the determination of school taxes, such as the distribution of state aid and the establishment of debt limits (see Office of Real Property Services, *Understanding the Equalization Rate* <http://www.orps.state.ny.us/pamphlet/under_eqrates.pdf> [last updated Nov. 21, 2003], cached at <http://www.courts.state.ny.us/reporter/webdocs/under_eqrates.pdf>).

ment only where there would "be at least a 10 percent change in the share of the levy of at least one segment of the taxing jurisdiction as the result of the use of the segment special equalization rate in place of the equalization rate which would otherwise be used for purposes of apportionment" (9 NYCRR 186-5.5 [a]).

In this case, the Riverhead Central School District is comprised of portions of the towns of Riverhead, Southampton and Brookhaven. In May 2002, the Town of Southampton applied to the State Board for a segment special equalization rate.[3] In its application, Southampton indicated that residential property in other parts of the town had been assessed at a significantly lower percentage of market value than residential property in the Riverhead school district segment. This disparity occurred because market values in the segment had not increased as dramatically as values in other parts of the town since Southampton's previous reassessment in 1992. Southampton further explained that it was planning to conduct a reassessment for its 2004 assessment roll and that the requested segment special equalization rate would be a temporary measure to ensure equitable apportionment of school taxes until the reassessment process was completed.

The State Office of Real Property Services (ORPS) analyzed the application and agreed with Southampton, finding that "the ratio of assessed value to sales price for the residential property in the Riverhead School District segment of the town is significantly higher than the ratio in the town as a whole."[4] Recognizing that the state equalization rate for Southampton was 2.37% in 2001, ORPS recommended that the State Board establish a segment special equalization rate of 3.01% for that portion of Southampton in the Riverhead Central School Dis-

---

3. An aggrieved taxpayer or a municipality in which the segment lies may submit a request to the State Board for a segment special equalization rate (*see* 9 NYCRR 186-5.3 [b]). The request must contain, among other things, "information sufficient to support a determination that application of the State equalization rate for the prior roll or a special equalization rate for the current roll to the segment would be inequitable" (9 NYCRR 186-5.3 [b] [3]). The State Board may also initiate a review process to determine whether a segment special equalization rate is warranted (*see* 9 NYCRR 186-5.3 [a]).

4. ORPS is the agency that carries out the policies and programs of the five-member State Board (*see* RPTL 201 [1]). The State Board is authorized to delegate a number of its functions to ORPS, including the evaluation of a request for a segment special equalization rate (*see* RPTL 202 [2] [b]).

trict.[5] ORPS found that application of the new segment special equalization rate would reduce the share of the tax levy for the Southampton segment of the school district by 17.9%, thereby satisfying the 10% threshold. Concomitantly, the new rate would increase the revenue share to be raised from the Brookhaven and Riverhead portions of the school district by 4.3%. After providing Brookhaven and Riverhead with notice and an opportunity to be heard at State Board meetings held to consider Southampton's application—during which Riverhead offered testimony and written submissions—the State Board approved the 3.01% special equalization rate for the Southampton segment.

In November 2002, the Town of Riverhead and Edward Densieski, an owner of real property in the Riverhead segment of the school district, commenced a CPLR article 78 proceeding in Supreme Court seeking to annul the State Board's segment special equalization rate determination. The court dismissed the proceeding for lack of subject matter jurisdiction, concluding that the proceeding should have been initiated in the Appellate Division in accordance with RPTL 1218.[6]

Riverhead and Densieski then brought this article 78 proceeding in the Appellate Division. The State Board and Southampton opposed the petition, arguing that Riverhead lacked both capacity and standing to sue, and that Densieski lacked standing. The Appellate Division agreed and dismissed the proceeding. We granted Riverhead leave to appeal.[7]

Capacity to sue is a threshold question involving the authority of a litigant to present a grievance for judicial review. The issue of capacity often arises when a governmental entity seeks to bring suit (see Matter of Graziano v County of Albany, 3 NY3d 475, 478-479 [2004]). "Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete

---

5. To illustrate, application of Southampton's state equalization rate of 2.37% to a parcel situated in the school district segment assessed at $2,370 would indicate a market value of $100,000 ($2,370 divided by .0237). In contrast, utilization of the segment special equalization rate of 3.01% for the same property results in a market value of $78,737 ($2,370 divided by .0301).

6. Although Riverhead and Densieski filed a notice of appeal from this order, they failed to perfect the appeal.

7. Densieski did not seek leave to appeal to this Court. Hence, we have no occasion to address whether he had standing to commence this proceeding.

statutory predicate" (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155-156 [1994]). An express grant of authority is not always necessary. Rather, capacity may be inferred as a necessary implication from the powers and responsibilities of a governmental entity, "provided, of course, that there is no clear legislative intent negating review" (*id.* at 156 [citation and internal quotation marks omitted]).

Relevant to this controversy, section 1218 of the Real Property Tax Law, the sole statute authorizing judicial review of equalization rates, provides, in part:

> "A final determination of the state board relating to state equalization rates may be reviewed by commencing an action in the appellate division of the supreme court in the manner provided by article seventy-eight of the civil practice law and rules upon application of the county, city, town or village for which the rate or rates were established."

Contrary to Riverhead's contentions, we conclude that RPTL 1218 applies not only to state equalization rates but also to segment special equalization rates. Section 1218 broadly authorizes review of State Board determinations "relating to" state equalization rates. Segment special equalization rates are a subset of state equalization rates—both reflect the percentage of full value at which real property situated in a given locale is assessed. Furthermore, the statute contemplates review of "the rate or rates" established for a specific municipality. Inasmuch as each municipality is assigned a single state equalization rate, the reference to "rates" evinces an intent that section 1218 apply to all species of state equalization rates, including segment special equalization rates (*see Matter of Town of Rye v New York State Bd. of Real Prop. Servs.*, 5 AD3d 783 [2d Dept 2004]; *Matter of City of Oswego v New York State Bd. of Real Prop. Servs.*, 280 AD2d 99, 101 [3d Dept 2001], *lv denied* 96 NY2d 711 [2001]).

Because RPTL 1218 specifically limits the capacity to challenge the State Board's determination to the municipality "for which the rate or rates were established," Riverhead necessarily lacks capacity to challenge the State Board determination granting Southampton a segment special equalization rate.[8] "[W]here a law expressly describes a particular act, thing or

---

8. Section 65 of the Town Law also does not aid Riverhead. That statute generally provides a town with the capacity to bring a proceeding "for the benefit or protection of the town, in any of its rights or property" (Town Law

person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240, Comment, at 411-412; *see also Community Bd. No. 4 [Manhattan] v Board of Estimate of City of N.Y.*, 88 AD2d 832, 833 [1st Dept 1982], *affd for reasons stated* 57 NY2d 846 [1982]). In light of the express limitation set forth in RPTL 1218, the necessary implication doctrine advanced by Riverhead is not applicable.

Inasmuch as we conclude that Riverhead lacks capacity to challenge Southampton's segment special equalization rate, we have no need to address whether Riverhead has standing under the facts and circumstances of this case.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, READ and R.S. SMITH concur.

Judgment affirmed, with costs.

---

§ 65 [1]). Here, although application of Southampton's segment special equalization rate will ultimately shift some of the overall tax burden to property owners in the Riverhead segment of the school district, no property or right of the town itself appears to be at stake (*County of Albany v Hooker*, 204 NY 1, 16-17 [1912]; *People v Ingersoll*, 58 NY 1, 29 [1874]; *Matter of Esopus Prop. Holders Residing Within New Paltz Cent. School Dist. v Potter*, 60 AD2d 948 [3d Dept 1978]). In any event, RPTL 1218, the more specific statute, takes precedence over section 65 of the Town Law, a general provision.