Jeffrey A. Casale Informal Opinion President CEO No. 2008-3 Marietta M. Seaman Vice President Suffolk Regional Off-Track Betting Corporation 5 Davids Drive Hauppauge, New York 11788.
Dear Mr. Casale and Ms. Seaman:
You have requested an opinion regarding whether the Suffolk Regional Off-Track Betting Corporation (hereinafter "OTB") is authorized to provide health insurance benefits to its current and retired directors. You have asked several additional questions, depending on our answer to the first question. If we conclude that the OTB is authorized to provide health insurance benefits to its directors, you have asked whether they are eligible for inclusion in the New York State Health Insurance Plan (NYSHIP) . If we conclude that the OTB is not authorized to provide health insurance benefits to its directors, you have asked whether the county that authorized the OTB could grant health insurance benefits to the OTB directors. If not, you have asked whether the OTB directors can participate in NYSHIP at their own expense.
Background
Your request follows upon an opinion issued by this Office, Op. Att'y Gen. No. 2007-F1, in which we concluded that public agencies whose board members were to be uncompensated for their service may not pay for health insurance benefits for their current or former board members, because the provision of health insurance benefits is a form of compensation. *Page 2 
Regional off-track betting corporations are established as public benefit corporations. Rac. Pari-Mut. Wag. Breed. Law § 502(1). The Suffolk OTB is administered by a board of directors, the members of which are appointed by the governing body of Suffolk County.Id. The powers of the OTB are exercised by its board of directors.Id. § 502(8). Unlike the public agencies that were the subject of Op. Att'y Gen. No. 2007-F1, the directors of the OTB are statutorily authorized to be compensated. Their compensation is provided as follows:
 a. The directors may receive a sum of two hundred fifty dollars for each day or part thereof spent in attendance at meetings held in accordance with subdivision eight of this section [relating to regularly-scheduled meetings], but not to exceed twenty-five hundred dollars during any one year.
 b. The directors may receive a sum of one hundred dollars for each day or part thereof at meetings other than those defined in subdivision eight of this section or otherwise in the work of the corporation; provided that such activities are approved by the board as a whole. Such additional expenses shall not exceed fifteen hundred dollars in any calendar year.
 c. The chairman of the board elected in accordance with subdivision one of this section shall receive additional compensation of one thousand dollars per year to cover those expenses and activities associated with such office.
 d. In addition, the directors shall be reimbursed for their actual and necessary expenses incurred in the performance of their official duties.
 e. Any expenses incurred by a director in excess of those authorized by paragraph d of this subdivision shall be the responsibility of the appointing political subdivision, payable on vouchers certified or approved by the chief fiscal officer of such political subdivision as is provided by law. *Page 3 
Rac. Pari-Mut. Wag. Breed. Law § 502(10).
In some instances, a per diem sum may serve as a proxy for reimbursement of actual and necessary expenses incurred in the performance of official duties, see, e.g., General Municipal Law § 77-c
(governing board of municipality may choose to pay reasonable per diem allowance for meals in lieu of actual and necessary expenses incurred for officers and employees traveling on official business), and thus might properly be viewed as reimbursement rather than compensation. Under the circumstances here, however, where the members of the board of directors are authorized to receive both a per diem sum and reimbursement for actual and necessary expenses, we believe that the per diem sum is properly considered a form of compensation. See Letter from Robert A. Feuerstein, counsel, New York State Racing and Wagering Board, to James M. McGuire, counsel to the Governor, (July 11, 2000),reprinted in Bill Jacket for ch. 462 (2000), at 6 (recommending an increase in the per diem sum paid to directors; "Their oversight responsibilities are weighty and the financial compensation is small. The proposed amendments to the compensation of directors may serve to attract a larger pool of qualified potential directors for appointment. . . ."); cf. Rac. Pari-Mut. Wag. Breed. Law § 502 (10) (c) ("The chairman of the board . . . shall receive additionalcompensation" of $1000 per year (emphasis added)).
The statutory scheme governing the compensation of OTB directors specifically authorizes OTB directors, other than the chairperson, to be compensated for only up to 25 days of OTB-related work per year.See Rac. Pari-Mut. Wag. Breed. Law § 502(10) (a) and (b) (authorizing compensation of $250 per day spent attending regularly-scheduled meetings, up to $2500 per year, and $100 per day spent on other OTB-related business, up to $1500 per year).
Analysis
In response to your first question, we believe that the compensation authorized by section 502 (10) is the total compensation that may be paid to OTB directors.[1] We reach this *Page 4 
conclusion based upon the statutory scheme governing the board of directors. First, the board of directors has no specific authority to provide health insurance benefits for or, more generally, to establish the compensation of its own members. Cf. Rac. Pari-Mut. Wag. Breed. Law § 503(6) (authorizing the board of directors to appoint officers, agents, and employees, and fix their compensation). Nor are the directors specifically authorized to participate in an existing health insurance program. Cf. id. § 606(3) (certain officers and employees of the New York City OTB Corporation may participate in City-authorized health insurance program). As a creature of statute, the OTB, acting through the board of directors, lacks powers not granted to it by express or necessarily implicated legislative delegation. AbieleContracting, Inc. v. New York City School Constr. Authority,91 N.Y.2d 1, 10 (1997).
When the absence of any specific authority for the board of directors to establish compensation for its members is viewed in combination with the precise compensation parameters laid out in section 502(10), the conclusion that only the compensation prescribed by section 502 is permissible is strengthened. Under these circumstances, we believe the principle of statutory construction of expressio unius est exclusioalterius applicable: where a law expressly describes a particular act, an irrefutable inference must be drawn that what was not included was intended to be excluded. Town of Riverhead v. State Bd. of Real Prop.Servs., 5 N.Y.3d 36, 42-43 (2005), quoting Statutes § 240, 1 McKinney's Cons. Laws of N.Y. at 411-12 (1971).
Finally, we note that members of the board of directors are authorized to hold outside employment. Rac. Pari-Mut. Wag. Breed. Law § 502(11). They are thus not prohibited from receiving compensation from other sources. Therefore, equity does not weigh against our concluding that directors are limited to receiving the compensation prescribed in section 502 (10). Indeed, an argument could be made that paying for the health insurance benefits of the directors, who are specifically authorized to be compensated for only up to 25 days of OTB-related work each year, would unfairly deprive the authorizing county of some of the funds it would otherwise receive. See Rac. Pari-Mut. Wag. Breed. Law § 516(2) (after payment of the costs of the OTB's functions, remaining net revenue is divided between the participating counties). *Page 5 
Having concluded that the OTB is not authorized to provide health insurance benefits to members of its board of directors, we turn to your next question. Although you have asked that we consider the question of whether health insurance benefits could be granted by Suffolk County, we choose to answer instead the dispositive question of whether the directors may receive additional compensation paid by Suffolk County.
Our answer to this question follows from our conclusion with respect to your first question. Subsection 10 of section 502, as discussed above, authorizes the members of the board of directors to "receive" compensation in designated amounts. We believe that the specificity with which the amount of the compensation that the directors may receive is provided by section 502 (10) precludes their receipt of any other compensation for their work as directors, whatever the source. We are thus of the opinion that they cannot receive compensation in the form of health insurance benefits provided by the authorizing county.
Finally, with respect to the question of whether the members of the board of directors are eligible to participate in NYSHIP at their own expense, we conclude that they may not. We assume here that OTBs may elect to participate in NYSHIP. See Civil Service Law § 163(2) (the president of the Civil Service Commission may authorize inclusion in NYSHIP of the employees of public benefit corporations). We further assume, without so concluding, that the directors of the OTB would be considered "employees" for purposes of participating in NYSHIP. Seeid. Even making these assumptions, we believe Civil Service Law § 167(2) proves determinative of the question. This section provides that
 [e]ach participating employer shall be required to pay not less than fifty percentum of the cost of premium or subscription charges for the coverage of its employees and retired employees who are enrolled in the statewide only or the statewide and comparable supplementary health insurance plans established pursuant to this article. . . . Such employer shall not be required to pay the cost of premium or subscription charges for the coverage of unpaid elected officials, or unpaid board members of a public authority, or their dependents. . . .
Id. While section 167(2) contains an exception to the general rule that an employer must pay at least 50% of the premium or subscription charges of its participating employees for the *Page 6 
employers of unpaid elected officials or unpaid board members of a public authority, it contains no exception that would apply to OTB directors, who are statutorily authorized to receive only a specified limited amount and form of compensation. Thus, pursuant to Civil Service Law § 167(2), the OTB as employer would be required to pay at least half of the cost of the directors' participation in NYSHIP. The directors could not fully pay the costs of their participation in NYSHIP but would have to accept some additional compensation in the form of payment for those benefits by the OTB. We therefore conclude that the directors may not participate in NYSHIP at their own expense.
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the public benefit corporation you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
[1] The Office of the State Comptroller opined in 1978 that a regional OTB corporation may include its directors in a health insurance plan that it provided for its officers and employees. Op. St. Comptr. No. 78-811. More recently, however, that Office has concluded that authority board members who are to be compensated at a fixed dollar amount and are reimbursed for actual and necessary expenses incurred in the performance of their official duties may not receive authority-provided health benefits. Office of the N.Y. State Comptroller, Buffalo Sewer Authority: Internal Controls over Health Insurance 9 (2007) . *Page 1