OPINION OF THE COURT
Elizabeth Hazlitt Emerson, J.
It is, ordered that the motion (001) by defendants Waldorf & Associates, Waldorf Risk Solutions, LLC, Waldorf Special Risk, LLC, Waldorf Servicing, LLC, William G. Waldorf, Stephen M. Waldorf, Christopher Y. Waldorf, Sr., and the Waldorf Family *761 Foundation, Inc. for an order pursuant to CPLR 3211 (a) (1), (3), (5), and (7) dismissing the complaint insofar as it is asserted against them is granted; and it is further ordered that the motion (002) by defendant Pamela J. Waldorf for an order pursuant to CPLR 3211 dismissing the complaint insofar as it is asserted against her is granted.
In this action, the plaintiff Excess Line Association of New York (hereinafter ELANY or the plaintiff) seeks an accounting of the defendants’ books and records and damages related to the defendants’ failure to report the placement of excess-line insurance policies and the defendants’ failure to pay premium taxes and stamping fees on excess-line policies from 1989 through 2011. The complaint alleges in the first cause of action that the defendants fraudulently filed premium tax statements (as defined in the Insurance Law) that stated under oath that they had “no business to report” and avoided paying stamping fees. The complaint alleges in the second cause of action that the defendants violated General Business Law § 349. The complaint alleges in the third cause of action that the defendants were negligent. The complaint alleges in the fourth cause of action that the defendants violated General Business Law § 340. The complaint alleges in the fifth cause of action that the plaintiff is entitled to an accounting pursuant to Insurance Law § 2118 (c).
The defendants Waldorf & Associates, Waldorf Risk Solutions, LLC, Waldorf Special Risk, LLC, Waldorf Servicing, LLC, William G. Waldorf, Stephen M. Waldorf, Christopher V Waldorf, Sr., and the Waldorf Family Foundation, Inc. (hereinafter referred to as the Waldorf defendants) move by way of a preanswer motion to dismiss the action on the grounds that a defense is founded upon documentary evidence, that the plaintiff lacks legal capacity to sue, and that the complaint fails to state a cause of action. The defendant Pamela Waldorf moves separately to dismiss the complaint on the ground that the court lacks personal jurisdiction over her. In determining these motions, in addition to the moving papers, the court has considered the parties’ oral arguments, which were made at a hearing before the undersigned on December 12, 2012.
In support of their motion, the Waldorf defendants contend that the plaintiff lacks capacity to maintain the present action. The Waldorf defendants argue that the plaintiff, a not-for-profit industry advisory association, is a creature of statute with specific enumerated powers and that such enumerated powers *762 do not expressly or by implication include the ability to commence the current action. Moreover, the Waldorf defendants argue that, notwithstanding the foregoing, there is no private right of action that permits the plaintiff to maintain the current action. In response, the plaintiff argues that the provisions of the Insurance Law which contain ELANY’s enumerated powers should be liberally construed to create the requisite capacity to commence this litigation to enforce compliance with the excess-line law.
The Waldorf defendants submit the affidavit of William G. Waldorf, a principal of the defendant companies. Mr. Waldorf avers that he and his brother Stephen now run these family-owned insurance-related businesses on a day-to-day basis. He states that the businesses consist of several commonly owned licensed and unlicensed insurance-related entities. He and his brother act as insurance brokers, consultants, and independent professionals for their clients, which are comprised primarily of large religious, educational, and other not-for-profit entities in many states and jurisdictions of the United States. Mr. Waldorf further states that he and his brother operate well-respected, well-recognized, and successful insurance consulting, brokerage, and related businesses built upon their family’s relationships, which were established over generations with certain leading underwriters at Lloyd’s of London. He denies the plaintiff’s claims that he and the other Waldorf defendants sought to evade compliance with the Insurance Law, engaged in anticompetitive activity, or advised their clients to purchase unsound insurance.
William G. Waldorf states that his companies deal with Lloyd’s of London, which is recognized in the insurance industry as providing a market for some of the best insurance products available worldwide, that the syndicates of Lloyd’s are well-known and well-respected in the industry, and that such syndicates are eligible to write excess-line insurance for insureds located in New York. Mr. Waldorf further states that, since 1995, the Waldorf defendants have made their insurance placements with Lloyd’s on behalf of their insureds on direct or independent placements, which they believed were not subject to many of New York’s insurance laws and regulations. Mr. Waldorf avers that, sometime in 2010, the New York State Depart *763 ment of Insurance[1] (hereinafter referred to as the Insurance Department) conducted a review of the Waldorf defendants’ direct Lloyd’s placement program. The Waldorf defendants provided the Insurance Department with all of the documentation that it requested. Upon completing its review, the Insurance Department informed the Waldorf defendants that, in its view, certain of the placements should have been characterized as excess-line placements subject to Insurance Law § 2118 and New York Insurance Department Regulation 41 (11 NYCRR part 27), which set out the requirements for excess-line placements, including the payment of a stated premium tax.
In his affidavit Mr. Waldorf states that, following the Insurance Department’s review, the Waldorf defendants and the Insurance Department came to an agreement, which was memorialized in a letter dated April 12, 2011. The letter reveals that the agreement covered the Waldorf defendants’ placement of excess-line insurance policies with Lloyd’s of London brokers for which no excess-line premium taxes were paid from approximately 1995 through 2009. The Waldorf defendants agreed to pay a specified amount in premium taxes and penalties to the Insurance Department and to pay excess-line premium taxes on all excess-line business they produced during 2010 by including such taxes in part IV of the 2010 premium tax statement due on March 15, 2011. They also agreed to make timely payments of all excess-line premium taxes in the future. The letter reveals that compliance with the foregoing would be accepted by the Insurance Department in full settlement of the Waldorf defendants’ premium tax liability for all Lloyd’s placements from 1995 through 2009 and in lieu of any disciplinary action that could be taken by the Insurance Department against the Waldorf defendants. Finally, the letter makes clear that failure to fully comply with the agreement could result in the commencement of disciplinary action by the Insurance Department against the Waldorf defendants and/or any responsible individuals and entities.
Mr. Waldorf states that the Waldorf defendants subsequently attempted to reach an amicable resolution with the plaintiff by giving the plaintiff financial information regarding the New York policies in question and by offering to provide the plaintiff with the documents that were provided to the Insurance Depart *764 ment. However, the plaintiff claimed that, notwithstanding the actions of the Insurance Department, there were unresolved issues that the plaintiff was empowered to investigate. The plaintiff demanded documents going back to 1989, which the Waldorf defendants declined to provide, and the instant action was commenced.
Before turning to a discussion of applicable law, it is important to note that the Waldorf defendants submit the plaintiffs Internet web page in support of their contention that the plaintiff is not entitled to commence the instant action against them. That page provides in pertinent part, as follows:
“The Excess Line Association of New York was created by statute in 1988 and began business in 1989. It is a non profit industry advisory association. ELANY is charged with the duty to facilitate and encourage compliance with the excess line law.
“ELANY:
“• acts as a facilitator between the brokers and the regulators.
“• conducts financial review and oversight of non-admitted markets.
“• provides continuing education:
“• certified provider for C.E. credits,
“• publications.
“• lobbies Regulators and Legislators.
“• maintains information database:
“• for reporting to regulators.
“• to assist members with tax reports.
“• reviews documents for compliance.
“• protects members, consumers and marketplace against fraud.
“• protects state revenues.
“• facilitates and encourages compliance.
“• acts as an industry representative organization” (ELANY, available at http://www.elany.org/ about.aspx).
The Waldorf defendants also cite to portions of the plaintiff s procedure manual, particularly paragraph F, which states that any member who is more than 30 days delinquent in the payment of fees may be reported to the Superintendent of Insur *765 anee.[2] The Waldorf defendants point out that there are no other enforcement powers included in the manual.
In opposition, the plaintiff argues that the Waldorf defendants have a duty to report all excess-line policies and that they have failed to comply with section 2118 (c) of the Insurance Law, which provides as follows:
“(1) The licensee shall keep a complete and separate record of all policies procured from unauthorized insurers under such license. The licensee shall also maintain files supporting declinations by authorized insurers . . .
“(2) Such records shall be open to examination by the excess line association as provided for in section two thousand one hundred thirty of this article and by the superintendent, as provided in section three hundred ten of this chapter, at all reasonable times.”
The plaintiff also argues that it has the right to collect stamping fees and that the Waldorf defendants’ failure to pay the stamping fees has damaged the plaintiff under General Business Law §§ 340 and 349. In addition, the plaintiff argues that it has the authority to commence a civil action pursuant to Insurance Law § 2130 (a) (11) which states, in pertinent part, that ELANY shall be authorized and have the duty to provide such other services to its members as are incidental or related to the purposes of the association. The plaintiff further argues that it is empowered by Insurance Law § 109 (d), which states, “The superintendent may maintain a civil action in the name of the people of the state to recover a judgment for a money penalty imposed by law for the violation of any provision of this chapter.” Finally, the plaintiff argues that Insurance Law § 2130 (a) (10) gives it the right to enforce the Insurance Law because it provides that ELANY shall be authorized and have the duty to “perform such other acts as will facilitate and encourage compliance by its members with the excess line law of this state and rules promulgated thereunder.”
The plaintiff submits the affidavit of Daniel F. Maher, Executive Director and Chief Operating Officer of ELANY, who avers that the settlement between the Waldorf defendants and the Insurance Department did not release the Waldorf defendants from their duties to the plaintiff and that the plaintiff has the *766 right to pursue its own remedies. He states that the plaintiff has litigated a number of times in the past without prohibition. Although he does not include a description of such prior litigation, he contends that as licensed excess-line brokers, the Waldorf defendants are members of ELANY, that they have a duty to comply with the state’s laws and regulations, and that they have a duty to report all excess-line procurements to the plaintiff for recording purposes and for the payment of stamping fees.
As previously discussed, the Waldorf defendants argue, among other things, that ELANY lacks the capacity to maintain the instant action. The Waldorf defendants assert that there is neither express statutory authority for such a suit by ELANY, nor can a private right of action to enforce the Insurance Law or to obtain the relief requested be fairly implied. In response, the plaintiff argues that the court should infer its capacity to maintain the instant suit from various provisions of the Insurance Law.
The Court of Appeals has examined the question of capacity in Community Bd. 7 of Borough of Manhattan v Schaffer (84 NY2d 148 [1994]). As noted by the Court of Appeals, although the concept of capacity is often confused with the concept of standing, the two legal doctrines are not interchangeable (id. at 154). Standing is an element of the larger question of justiciability. The various tests that have been designed to determine standing are designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution (id. at 154-155). The most critical requirement of standing is the presence of an injury-in-fact — an actual legal stake in the matter being adjudicated (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991]). Capacity, in contrast, concerns a litigant’s power to appear and bring its grievance before the court (Community Bd. 7, 84 NY2d at 155). In seeking to define this important legal concept, the Court of Appeals has stated that legal capacity to sue, or lack thereof, sometimes depends purely on the litigant’s status, such as a natural person’s status as an infant, an adjudicated incompetent, or a trustee. Problems arise in the context of suits brought by artificial entities, such as those created by legislative enactment. With respect to such entities, the Court of Appeals wrote in Community Bd. 7, “Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue” (id. at 155-156). The *767 right of such entities to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate (id. at 156, quoting Matter of B. T. Prods. v Barr, 44 NY2d 226, 236 [1978]). This principle is a well-known one, originating in the more general canon that “a creature of the State . . . has no power other than that given it by the Legislature, either explicitly or by necessary implication” (id.). The Court of Appeals noted, however, that the authority of a governmental agency to bring suit does not require in every instance that there be express legislative authority for such power. Rather, the capacity to sue may also be inferred as a necessary implication from the agency’s power and responsibility (id.).
An examination of the issue of ELANY’s capacity begins with section 2130 of the Insurance Law, which created ELANY and set forth its power and duties. Such duties can best be described as receiving and recording information, stamping documents, preparing periodic reports for delivery to the Superintendent of Insurance and each licensee, supplying forms and providing incidental services to ensure compliance with the Insurance Law and the regulations promulgated pursuant thereto. Section 2130 makes clear that ELANY must perform its functions under a plan of operation approved by the Superintendent of Insurance and that ELANY is supervised by the Superintendent of Insurance, thereby negating the argument that ELANY is empowered to act independently. Further, such section makes clear that nothing contained therein shall be deemed to diminish the powers of the Superintendent. Section 2130 makes no reference to the power to bring a judicial proceeding or any other type of enforcement action. In fact, the language of section 2130 contains no provisions that could be deemed enforcement powers. The conclusion that ELANY lacks any enforcement powers is further supported by ELANY’s plan of operation, which provides that members who fail to submit documents or pay fees shall be reported to the Superintendent. This notion that ELANY lacks enforcement power and that its remedy is to report noncompliance by its members to the Superintendent is consistent with the fact that it is the Superintendent who is given broad powers to enforce compliance with the Insurance Law (see Insurance Law § 109). Therefore, with respect to the question of capacity, there is no express statutory authority to support the plaintiffs claim.
The court, however, must still determine whether capacity to maintain the instant suit can be properly or fairly inferred from *768 ELANY’s duties and responsibilities. Although the Waldorf defendants do not specifically address this question, relying principally on their arguments regarding a private right of action, the plaintiff puts forth certain arguments under the heading Lack of Standing that bear on the question of necessary implication. For example, the plaintiff argues that, although Insurance Law § 2130 (a) (10) and (11) do not expressly reference enforcement matters, the language of such paragraphs should be liberally construed to answer the capacity question in its favor. Paragraph (10) of section 2130 (a) provides that ELANY shall be authorized and have the duty to “perform such other acts as will facilitate and encourage compliance by its members with the excess line law of this state and the rules promulgated thereunder.” Paragraph (11) of section 2130 (a) authorizes ELANY to “provide such other services to its members as are incidental or related to the purposes of the association.” The court finds that, in light of the provisions of the Insurance Law previously examined, this general language cannot be fairly read to infer the power to maintain the instant action in which ELANY seeks to enforce provisions of the Insurance Law in a state court separate and apart from actions by the Superintendent of Insurance. Contrary to the plaintiffs contentions, these provisions are merely general in nature and specifically related to and limited by the remaining provisions contained within section 2130 (a). Neither this general language nor any other provision of section 2130 can be read to infer that enforcement action is a necessary implication of ELANY’s powers and duties.
The court finds that the facts presented here are similar to those presented in Fiero v Financial Indus. Regulatory Auth., Inc. (660 F3d 569 [2d Cir 2011]). In that case Financial Industry Regulatory Authority, Inc. (FINRA), a self-regulatory organization registered with the Securities and Exchange Commission, commenced a federal court action to collect disciplinary fines that it had imposed against the plaintiff, who was one of FIN-RA’s member firms. The issue before the court was the same as in the instant case, i.e., did FINRA have the authority or capacity to commence an action to collect disciplinary fines. The Second Circuit held that, even though FINRA had broad powers under section 15A (b) of the Securities Exchange Act of 1934 (15 USC § 78o-3 [b]) to discipline its members and to impose fines, there was no “express statutory authority for [FINRA] to bring judicial actions to enforce collection of fines” (id. at 574). The Second Circuit, using similar reasoning to that applied by *769 the Court of Appeals in Community Bd. 7, reasoned that the absence of such express statutory authority was significant evidence that the legislature, in drafting the enabling statute, did not intend to provide FINRA with the authority to commence judicial proceedings.
The present case is also substantially similar to HANYS Servs. v Empire Blue Cross & Blue Shield (292 AD2d 61 [2002]). In that case the Third Department found that, although the plaintiff had a statutory right and duty to collect insurance premiums, it did not have the right to maintain an enforcement action to collect unremitted fees. Finding that the plaintiff lacked authority to pursue an action, the Third Department held that a statutory command to collect insurance premiums does not necessarily carry with it the capacity to maintain an enforcement proceeding. In reaching its conclusion, the Court went on to analyze the authorization to maintain a private right of action (see infra).
In the present case, the absence of express statutory authority, combined with provisions of the Insurance Law, provide convincing evidence that the legislature did not intend to give ELANY the power to sue, but expressly reserved such power to the Superintendent of Insurance. This conclusion is further supported by ELANY’s operating plan, as approved by the Superintendent of Insurance, which directs ELANY merely to notify the Superintendent of misconduct or noncompliance. Accordingly, the court finds that the plaintiff lacks the necessary authority or capacity to pursue this action.
Closely related to the issue of capacity is the issue raised by the Waldorf defendants, i.e., whether the plaintiff has a private right of action under the Insurance Law. The record is clear that the Insurance Law does not provide a private right of action which could be employed by ELANY to enforce the excess-line law. However, when, as here, the statute is silent as to the availability of a private right of action, the court may find an implied private right of action by applying a three-part analysis (HANYS Servs. at 64). Each part of the analysis must be satisfied in order to find that a private right of action may be “fairly implied” (id.). The court finds that the plaintiff has failed to satisfy all three parts of the analysis.
To determine whether a statute implies a private right of action, three factors must be considered: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action *770 would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme (Goldman v Simon Prop. Group, Inc., 58 AD3d 208 [2008]; Ahmad v Nassau Health Care Corp., 8 AD3d 512, 513 [2004], quoting Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; Pelaez v Seide, 2 NY3d 186 [2004]). “Avoiding unwarranted interference with the legislative scheme is the ‘most critical’ factor in determining whether a private cause of action may be fairly implied from the enactment of a statute” (Goldman v Simon Prop. Group, Inc. at 215 [and cases cited therein]).
Here, the plaintiff is not a member of a class for whose benefit the statute was enacted. As set forth in the legislative history of the excess-line law, the underlying purpose thereof is to protect persons seeking insurance in the State of New York, to permit excess-line insurance to be placed with reputable and financially sound unauthorized insurers, and to protect the revenues of the State of New York (L 1988, ch 630, § 1). Given these stated purposes, the class of persons for whose benefit the excess-line law was enacted is the people of the State of New York, not the plaintiff. The mere fact that the plaintiff has recited some of these purposes in its plan of operation does not make it a member of the protected class.
The plaintiff fails on the second and third prongs as well. Even where the recognition of a private right of action might promote one aspect of a statute’s legislative goals, the greater concern is the “ ‘consistency of doing so with the purposes underlying the legislative scheme’ ” (Sheehy v Big Flats Community Day at 634, quoting Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983]). “[A] private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme” (Sheehy v Big Flats Community Day at 634-635). As previously noted, the Superintendent of Insurance possesses broad regulatory powers over the sale of insurance policies in this state. Section 109 (d) of the Insurance Law reveals that only the Superintendent of Insurance is empowered to maintain a civil action. This provision, together with the broad disciplinary powers given to the Superintendent of Insurance, make plain the legislature’s desire to establish the Superintendent as the sole regulator. This conclusion is supported by the express language of section 2130 (g), which provides, “Nothing in this section shall be *771 construed to . . . diminish the power of the superintendent to take any other disciplinary action otherwise authorized by this chapter.” As noted throughout this decision, if the plaintiffs members fail to provide documents or pay fees, the plaintiff is to report it to the Superintendent of Insurance. Allowing the plaintiff to act independently, and perhaps in contravention of the Superintendent of Insurance, would, in essence, set ELANY up as a co-regulator and undermine the clear legislative intent that ELANY’s actions be supervised by the Superintendent of Insurance. It is unlikely that the legislature would have intended for the plaintiff to be a co-regulator with the Superintendent, and the plaintiff has offered little evidence of this intention other than its assertion that the words “facilitate” and “encourage compliance” in Insurance Law § 2130 (a) (10) should be read that way. It is more likely that the legislature would not want a group of competitors to have the right to bring an action against a fellow competitor, which is exactly what has happened here. Given that the plaintiffs members are competitors in the insurance industry, there is no way of knowing whether this litigation is a legitimate attempt to enforce the Insurance Law or an attempt to punish, injure, or obtain an unfair advantage. Therefore, the proper balance seems to be that the plaintiff may notify, advise, or inform the Superintendent of Insurance and allow the Superintendent to make an independent evaluation of what steps to take. If the Superintendent of Insurance finds that punishment is warranted it could respond in a variety of ways, including suspending the violator’s license for noncompliance with the statute (see Insurance Law § 2105 [a]). Thus, recognition of a private right of action under the present circumstances would not advance the legislative purpose and would be inconsistent with the legislative scheme (see Hudes v Vytra Health Plans Long Is., 295 AD2d 788 [2002]). Accordingly, the court finds that ELANY does not have a private right of action under the Insurance Law.
The court also finds that the complaint fails to state a cause of action. On a motion to dismiss pursuant to CPLR 3211 (a) (7), the pleadings are to be afforded a liberal construction and the court is obligated to accept the facts alleged in the complaint as true and to accord the plaintiff the benefit of every possible favorable inference (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173 [2011]; Salles v Chase Manhattan Bank, 300 AD2d 226 [2002]). Moreover, the court may freely consider affidavits submitted by the plaintiff to remedy any defects in the *772 complaint (Leon v Martinez, 84 NY2d 83, 88 [1994]). Adhering to this standard, the court finds that the Waldorf defendants are entitled to dismissal of the complaint.
The court finds that the plaintiff has failed to state a cause of action for fraud. In order to make a prima facie showing of fraud, a plaintiff must establish “a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury” (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119 [1969]). Moreover, fraud must be pleaded “with particularity, including specific dates and items, if necessary and insofar as practicable” (Alexander Infusion, LLC v Professional Home Care Servs., Inc., 25 Misc 3d 1240[A], 2009 NY Slip Op 52498[U], *4 [2009], citing CPLR 3016 [b]). Conclusory allegations of fraud are not sufficient (Sargiss v Magarelli, 50 AD3d 1117 [2008], affd as mod 12 NY3d 527 [2009]; Dumas v Fiorito, 13 AD3d 332 [2004]). The plaintiff has failed to allege facts which satisfy the elements of fraud, including, without limitation, the alleged reliance. In addition, the plaintiff has failed to allege the necessary facts with particularity. Therefore, the first cause of action is dismissed.
The fourth cause of action alleges that the Waldorf defendants violated General Business Law § 340, also known as the Donnelly Act. The court finds that the plaintiff has failed to state a cause of action under the Donnelly Act. General Business Law § 340 prohibits a monopoly in the conduct of any business, trade or commerce, or in the furnishing of any service in this state which restrains competition or the free exercise of any activity in the conduct of any business, trade or commerce. There is no dispute that the plaintiff is a not-for-profit industry advisory association and does not conduct any business, trade, or commerce in the relevant market. Therefore, any alleged violations of the Donnelly Act would not adversely affect the plaintiff. Accordingly, the second cause of action is dismissed.
The plaintiff has failed to state a cause of action for negligence. To establish a prima facie case of negligence under common law, a plaintiff must demonstrate that the defendants owed the plaintiff a duty, a breach thereof, and that the plaintiff suffered an injury proximately caused by defendants’ breach (Polly Esther’s S., Inc. v Setnor Byer Bogdanoff Inc., 10 Misc 3d 375 [2005], citing Solomon v City of New York, 66 NY2d 1026 [1985]). The plaintiff has failed to allege that the Waldorf defendants owe it a duty of due care, other than to comply with *773 the excess-line law. Thus, the allegation that the Waldorf defendants were negligent is duplicative of the allegation that the Waldorf defendants failed to comply with the excess-line law. The third cause of action is, therefore, dismissed.
The second cause of action alleges a violation of General Business Law § 349, a statute based on broad consumer-protection concerns (Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201, 209 [2001]). The plaintiff has failed to state a cause of action under General Business Law § 349, which provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful. To state a claim under section 349, the plaintiff must show “that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof’ (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995]). The typical violation contemplated by General Business Law § 349 involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods, usually by way of false and misleading advertising. Such is not the case here (Reed Constr. Data Inc. v McGraw-Hill Cos., Inc., 745 F Supp 2d 343 [2010]). It is clear that the plaintiff is not a consumer or even a market participant. Therefore, the fourth cause of action is dismissed.
The fifth cause of action alleges that the plaintiff is entitled to an accounting pursuant to Insurance Law § 2118. Insurance Law § 2118 does not provide for the remedy of an accounting. Moreover, although section 2118 (c) requires excess-line brokers to maintain records and permits ELANY to inspect such books and records, as the court has already discussed in detail, enforcement of such provisions must be sought by the Superintendent of Insurance and not directly and independently by ELANY. Therefore, the fifth cause of action is dismissed.
Accordingly, the Waldorf defendants’ motion to dismiss the complaint insofar as it is asserted against them is granted.
Turning to the motion by the defendant Pamela Waldorf to dismiss the complaint on the ground that the court lacks personal jurisdiction over her, the defendant Pamela Waldorf submits, inter alia, her personal affidavit. Pamela Waldorf avers that she is not and has never been an excess-line broker in New York or in any other state and that she does not transact any business in New York. She further states that she resides in Florida on a full-time basis and conducts her business in Flor *774 ida. She states that she has never sold insurance to New York insureds from any unauthorized insurer. Pamela Waldorf states that she is solely a member of Waldorf Risk Solutions, LLC, Waldorf Special Risk, LLC and Waldorf Servicing, LLC, and is not a member of Waldorf & Associates or the Waldorf Family Foundation, Inc. In addition, Pamela Waldorf states that, contrary to the plaintiffs contention, she is not accessible through the Waldorf & Associates’ website. Pamela Waldorf states that, although a settlement was reached regarding the conduct of the family businesses in a prior action, she has no access to or control over the business documents, which are in the custody of her brothers William and Stephen.
In opposition to the motion, the plaintiff argues that the defendant Pamela Waldorf is subject to personal jurisdiction by virtue of her status as a member of the Waldorf defendants from which she receives a salary and benefits. The plaintiff submits, inter alia, a petition for dissolution and a settlement agreement reached between the Waldorf family members on January 1, 2002, in a prior proceeding in this court captioned: Matter of William G. Waldorf and Stephen M. Waldorf, each holders of 25% of Waldorf Servicing, LLC, Waldorf Special Risk, LLC, and Waldorf Risk Solutions, LLC v Christopher V. Waldorf, Jr. and Pamela Jeanne Waldorf (index No. 07-10120). The petition indicates that Pamela Waldorf is a 25% owner of the petitioner LLCs and that the Waldorf defendants agreed to pay her a salary and benefits. In addition, the plaintiff relies on a statement found in this court’s order dated July 30, 2007, in that proceeding, in which the court, summarizing the parties’ contentions, noted that Christopher and Pamela Waldorf “assert that Pamela continues to contribute to the companies by overseeing and coordinating certain claims handling responsibilities as well as compliance and licensing issues for the Waldorf companies in virtually all 50 states.”
For long-arm jurisdiction to attach under CPLR 302 (a) (1), there must be “some articulable nexus” between the business transacted in New York and the causes of action sued upon (McGowan v Smith, 52 NY2d 268, 272 [1981]). The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation (Path Instruments Intl. Corp. v Asahi Opt. Co., 312 F Supp 805, 810 [SD NY 1970] [and cases cited therein]). Although a corporation can act only through an employee or agent, the employee or agent being a live rather than a fictional being can act *775 on behalf of himself or his employer or principal. “He does not subject himself, individually, to the CPLR 301 personal jurisdiction of our courts, however, unless he is doing business in the State individually” (Laufer v Ostrow, 55 NY2d 305, 313 [1982]).
There is no dispute that the Waldorf companies transact business in New York and that the defendant Pamela Waldorf receives a salary from such companies. The court concludes, however, that there is no showing that the defendant Pamela Waldorf is doing business in the State individually and not merely as an employee or agent of the Waldorf defendants (Laufer v Ostrow, McGowan v Smith). Thus, this court declines to disregard the general rule requiring an individual basis for long-arm jurisdiction over her pursuant to CPLR 302 (a) (1). Accordingly, the complaint is dismissed insofar as it is asserted against the defendant Pamela Waldorf.
In sum, the motions by the Waldorf defendants and Pamela Waldorf to dismiss the complaint are granted.

. The New York State Department of Insurance is now the Insurance Division of the New York State Department of Financial Services (see Financial Services Law § 205).

. The Superintendent of Insurance is now the Deputy for Insurance and the Head of the Insurance Division of the New York State Department of Financial Services (see Financial Services Law § 203).